IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

PATRICK LEWIS HUBBARD                                                   PLAINTIFF

V.                          CASE NO. 5:17-cv-05097

LIEUTENANT R. HOLT; SHERIFF
SHAWN HOLLOWAY; and MAJOR
ROBERT BERSIE                                               DEFENDANTS

## OPINION AND ORDER

This is a civil rights case filed by the Plaintiff Patrick Hubbard under the provisions of 42 U.S.C. § 1983. Hubbard proceeds *pro se* and *in forma pauperis* ("IFP"). He is incarcerated in the Benton County Detention Center ("BCDC"). The Prison Litigation Reform Act ("PLRA") modified the IFP statute, 28 U.S.C. § 1915, to require the Court to screen complaints for dismissal under § 1915(e)(2)(B). The Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

### I. BACKGROUND

According to the allegations of the Complaint (Doc. 1), Hubbard is incarcerated on pending criminal charges. Hubbard alleges his constitutional rights are being violated in the following ways: (1) guards are often physically or verbally abusive to inmates; (2) unsanitary conditions when thirty or more inmates are required to use the same toilet and sink; (3) inmates are overcharged for medical care ($20 for visits and $10 for

-1-

prescriptions); (4) illegal housing of the mentally ill; (5) inadequate grievance procedure with no appeal process; (6) food is being served at room temperature; (7) inmate accounts are charged $1.50 per week for indigent supplies creating a negative balance for those without funds; (8) inmates are often placed in segregation for infractions that are not listed as rule violations, *e.g.* disrespecting staff; (9) malicious rules with no security purpose such as being locked out of your cell for 8 to 10 hours and not being allowed to have cups, bowls, commissary outside your cell during lock out periods; (10) taking away everyone's phone or commissary privileges based on the actions of one person; (11) loss of kiosk privileges in retaliation for complaints about a non-police official coming to Pope County Jail to pick Hubbard up and transport him to the BCDC and asking for an investigation of why Detective Eddie Weimer was allowed to sign a warrant he did not serve; (12) legal mail being opened outside his presence and a form removed; (13) being denied adequate healthcare by not being allowed to see the social worker or a psychologist for depression; (14) being fed last because an inmate laughed after being ordered to be quiet; and (15) being discriminated against. Hubbard has sued the Defendants in both their individual and official capacities.

As relief, Hubbard seeks compensatory and punitive damages. He also asks that Defendants be ordered to put any money illegally obtained towards something constructive for the inmates such as television sets, board games, clothes, mats, etc.

## II. DISCUSSION

Under the PLRA, the Court is obligated to screen a case prior to service of process being issued. A claim is frivolous when it "lacks an arguable basis either in law or fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the Court bears in mind that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

The claims Hubbard seeks to bring on behalf of others are subject to dismissal. These claims are: guards often physically abusing inmates; illegal housing of the mentally ill; and inmates being placed in segregation for infractions that are not listed as rule violations. A claim that an individual's constitutional rights have been violated is regarded as personal in nature. *See Broadrick v. Oklahoma,* 413 U.S. 601, 610-11 (1973); *United States v. Mitchell,* 915 F.2d 521, 526 n. 8 (9th Cir. 1990). Ordinarily, one individual cannot assert a claim on behalf of another individual. *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself'"). Plaintiff has not alleged that he was physically abused, is mentally ill, or was put in segregation for an infraction not listed as a rule violation. No constitutional claim is stated.

Hubbard's claim that he was verbally abused or harassed is subject to dismissal. "Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim. The Constitution does not protect against all intrusions on one's peace of mind. Fear or emotional injury which results solely from verbal harassment or idle threats is generally not

sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997). No claim of constitutional dimension is stated.

Hubbard's claim about the alleged unsanitary conditions in connection with the use of a communal toilet are subject to dismissal. As a preliminary matter, Hubbard has not stated how any of the Defendants were personally responsible for these conditions. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability, [Hubbard] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII; *see also Wilson v. Seiter*, 501 U.S. 294 (1991); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same"). "[P]unishment is cruel and unusual if it deprives inmates of the minimal civilized measure of life's necessities." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(internal quotation marks and citation omitted).

Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison conditions claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir.

2008)(citation omitted). To state an Eighth Amendment claim, the plaintiff must allege that prison officials acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Hubbard does not allege that he was unable to use the toilet when he needed to. He does not allege his hygiene suffered as a result or that he contracted any disease. While he does allege there was an outbreak of staph infection at the facility in April and May of 2017, he does not allege the outbreak was in the pod he was confined to or that there was any evidence suggesting the outbreak was connected in anyway to the use of the communal toilet during lock out periods. Certainly, there is nothing in the Complaint suggesting that the Hubbard was deprived of a single identifiable human need. No claim is stated.

With respect to the food being served at room temperature, Hubbard makes no other allegations regarding the food. He does not allege that this was an unsafe practice, that his diet was inadequate, or that his health was impacted. No claim is stated.

With respect to being charged for the indigent supplies, Hubbard makes no allegation that he was ever deprived of hygiene supplies. In fact, he alleges he received the supplies, but that his account would be charged and go into a negative balance if he had no funds available. He does not allege that he has been unable to maintain reasonably adequate hygiene. Clearly, he has suffered no objectively serious deprivation.

Hubbard's claim that he was charged for medical care is also subject to dismissal. It is constitutionally permissible for a detention center to charge a detainee the cost of medical care. In the *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239 (1983), the Massachusetts General Hospital ("MGH") sought to recover from the City of Revere

costs of medical care provided to an individual wounded while fleeing from the City police. *Id.* at 240. The police officers summoned a private ambulance which took the individual to MGH. *Id.* The Court noted that both the Due Process Clause and the Eighth Amendment required the responsible governmental agency to provide medical care to persons injured while being apprehended and those in its custody. *Id.* at 244. "If . . . the governmental entity could obtain the medical care needed for a detainee only by paying for it, then it must pay." *Id.* at 245. However, the Court noted there were "other means by which the entity could meet its obligation" to provide medical care. *Id.* It concluded that "as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law." *Id.* The Court clearly stated that "the injured detainee's constitutional right is to receive the needed medical treatment; how the [governmental entity] obtains such treatment is not a federal constitutional question." *Id.*

Thus, while jails must provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999); *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)(no basis for due process claim where deductions from prisoner accounts were

assessments for value received). No claim of constitutional dimension is stated by Hubbard's allegations that he was made to pay a portion of the cost of his medical care.

Hubbard's claim about the alleged inadequacies of the grievance procedure is also subject to dismissal. There is no constitutional right to a grievance procedure. *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). Similarly, the denial of a grievance does not state a substantive constitutional claim. *Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). "Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman v. White*, 112 F. Supp. 2d 534, 542 (E.D. Va. 2000), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Hubbard does not allege his access to the courts was impeded.

Next, Hubbard alleges that the BCDC has "malicious rules" with no apparent security purpose, including locking inmates out of their cells during the day and depriving them of various items to use outside of their cells. He does not allege how these rules violate his constitutional rights. As the Eighth Circuit has stated:

> we wish to emphasize our frequently expressed view that the federal courts, whether in habeas corpus or in section 1983 contexts, should not be unduly hospitable forums for the complaints of either State or federal convicts; it is not the function of the courts to run the prisons, or to undertake to supervise the day-to-day treatment and disciplining of individual inmates; much must be left to the discretion and good faith of prison administrators. That is not to say, of course, that the federal courts should not exercise their jurisdiction in proper cases, but the exercise of it should be sparing.

*Sawyer v. Sigler*, 445 F.2d 818, 819 (8th Cir. 1971); *see also Cole v. Benson*, 760 F.2d 226, 227 (8th Cir. 1985)("[I]t is not the function of this court to interfere in the day-to-day running" of detention facilities). While Hubbard may object to these rules, he does not allege that the rules deprived him of a single identifiable human need or in any other way

infringed on his constitutional rights. No claim of constitutional dimension is stated by Hubbard's disagreement with these rules.

Next, Hubbard alleges his rights are violated when the privileges of all inmates in the pod are being taken away based on the action of one inmate. No claim of constitutional dimension has been stated. Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitations or retraction of an inmate's rights. See *Baribeau v. City of Minneapolis*, 596 F.3d 465, 483 (8th Cir. 2010). The measures allegedly taken by the Defendants, while they may have been disagreeable to the inmates, did not violate the Eighth Amendment. *See, e.g., Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)(Eighth Amendment claim evaluated in terms of whether the conduct was "so inhumane, base or barbaric so as to shock the sensibilities").

Hubbard alleges he lost kiosk privileges in retaliation for his complaining that he was picked up in Pope County and transported to the BCDC by a non-police official and that a detective was allowed to sign a warrant he did not serve. Inmates have a "First Amendment right to petition for redress of grievances [which] includes redress under established grievance procedures." *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994). Retaliatory action in response to the filing of grievances may implicate the Constitution. However, in this case, Hubbard alleges only that he was denied the right to use the electronic kiosk to submit grievances and requests. He was still permitted to submit grievances in paper form. His claim therefore does not implicate the constitution.

Hubbard further alleges that his legal mail was opened outside his presence on one

occasion, and a form was removed. Confidential legal mail should be opened in the presence of the inmate. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). However, an isolated instance of opening confidential legal mail does not support a § 1983 action. *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997). Here, Plaintiff has only alleged a single isolated incidence. He has not alleged that his right to counsel or to access to the courts was infringed by the alleged interference with his legal mail. *Id.* Hubbard has not stated a claim of constitutional dimension.

Hubbard has also alleged that he has not been allowed to see the social worker or psychologist. However, he has not alleged that any of the named Defendants were involved in the scheduling of medical or mental health appointments. Hubbard has not named anyone in the medical department as a Defendant. As he has alleged no personal involvement on the part of the named Defendants, no claim is stated.

Next, Hubbard has alleged that on one occasion his pod was fed last because someone laughed when they had been told to be quiet. Plaintiff does not allege that he was deprived of food. The timing of meals does not state a claim of constitutional dimension.

Hubbard also makes the conclusory allegation that he was being discriminated against. He does not allege if the alleged discrimination was based on race or some other protected status. The "unequal treatment of person who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Hubbard has failed to state a claim for unlawful discrimination.

Finally, Hubbard has sued all Defendants in their official capacities. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity" *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolcerson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016)(citation omitted). Hubbard has failed to allege the existence of any custom, policy, or practice of Benton County that was the moving force behind the alleged constitutional violations. No official capacity claim is stated.

### III. CONCLUSION

The Complaint fails to state a cognizable claim under § 1983 and is frivolous. Therefore, it is **DISMISSED WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) (IFP action may be dismissed at any time due to frivolousness or for failure to state a claim).

**IT IS SO ORDERED** on this 16th day of August, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE